**FERGUSON, PRAET & SHERMAN, APC**
PETER J. FERGUSON SBN 108297
peterferg@aol.com
ALLEN CHRISTIANSEN SBN 263651
achristiansen@law4cops.com
1631 E. 18th Street
Santa Ana, California 92705
(714) 953-5300 • Fax (714) 953-1143

Attorneys for Defendants
CITY OF EL MONTE, VICTOR RUIZ and JAVIER ROJAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHANG LE and GIAO DANG, Successors in Interest and Individually, et al.,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF EL MONTE; et al.,<br><br>　　　　　Defendants.<br>_____ | No.  CV14-04579 SJO (SSx)<br><br>Hon. S. James Otero<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW**<br><br><br>Date　　　: April 21, 2015<br>Time　　　: 9:00 a.m.<br>Courtroom : 1 |

　　　COME NOW, Defendants CITY OF EL MONTE, VICTOR RUIZ and JAVIER ROJAS submit their memorandum of contentions of fact and law.

**I.　　　FACTUAL CONTENTIONS**

　　　On June 14, 2012, Officers Victor Ruiz and Javier Rojas responded to a call regarding a "fight" between family members. Officers were also informed that the suspect, Khoa An Le suffers from schizophrenia. Upon arriving Officers contacted family members. A language barrier existed as the family spoke Vietnamese with the exception of Diane Le who spoke some English.

The officers were informed that a physical altercation had occurred and that the father, Khang Le had been assaulted. Family members informed the officers where the suspect/subject Khoa Le was. Officers followed Khang Le who went first and directed them to the garage and then to a make shift bedroom where Khoa An Le apparently lived.

When officers made contact, a loud argument continued between the two involved subjects. Officers asked the father to step out and spoke in a low voice to Khoa An Le attempting to calm him down.

The garage area where the officers and subject were was tight in terms of ability to maneuver and filled with boxes and articles in rows. Due to safety concerns, officers informed Mr. Le that they were there to help and suggested they move out from this area to discuss the incident. At one point, Officer Ruiz touched Mr. Le's elbow area as if to suggest a direction for him to go.

Instantly, and without warning, Mr. Le began attempts to strike at officers. During an approximate two minute period officers were struck in the face and body by Mr. Le. He was a large individual and although officers struck him with fists, batons and a taser all force utilized toward Mr. Lea, he appeared oblivious to pain and showed an incredible amount of strength.

Eventually, Officer Ruiz was able to apply a carotid restraint hold. This caused Mr. Le to stop fighting and then allow officers time to place two sets of handcuffs on Mr. Le. At this point, the officers were exhausted. Within a few moments, Mr. Le attempted to get up and the officers believed he was still potentially violent and capable of causing harm.

Officer Rojas held up the Mr. Le's ankles so that he would not attempt to kick and get up. Mr. Le's movements were violent and forceful. Officer Ruiz first attempted to hold Mr. Le but his movements were forceful. Due to the exhaustion levels of the officers and Mr. Le's strength, Officers requested a hobble and Officer Ruiz straddled on the back area of Mr. Le in order to keep him from

fighting and resisting. He was physically moving until other officers arrived and the garage door was opened.

Officers Montierth and Burse came in and moved Mr. Le out to the drive way. Once outside, it was determined that Mr. Le was not breathing and CPR was begun. Mr. Le succumbed at the hospital approximately twenty minutes later.

Of note, other officers have been to the location prior and the officers were able to subdue the subject. It is undisputed that he is psychotic, has been violent in the past and was violent this particular evening. The coroner ruled the death undetermined, caused by poor health issues and over medicated as well as proximate time of death during a police restraint. A carotid restraint hold was utilized. With that said, there were no broken bones nor injury to the throat/neck. In otherwords, the hold was applied correctly and there is no evidence the hold contributed to the death.

This matter started out as a state lawsuit filed in the Superior Court of California on December 10, 2012. At that time there were no Federal causes of action contained within the complaint and Plaintiffs' counsel represented that there was no intent to pursue any Federal claims.

**Plaintiff's Allegations**

Plaintiffs only claim is the third cause of action for excessive force by way of a survival action. All other clams have been previously dismissed.

**Defendants Allegations**

Defendants deny liability, deny that plaintiff's rights were violated, and contend that all actions – including force used – were lawful, justified, and reasonable.

II. LEGAL BRIEF

A. ISSUES OF LAW

The first amended complaint, third cause of action: alleges violation of 42 USC section 1983 (excessive force-survival action)

Defendants deny liability, deny that plaintiff's rights were violated, and contend that all actions – including force used – were lawful, justified, and reasonable.

### 1. *Survival Actions*

Plaintiffs bring their claim as the parents representative of decedent Khoa An Le. Specifically, Plaintiffs allege "(KHANG LE and GIAO DANG, Successors in Interest against Defendants ....)

49. Plaintiffs as successors in interest re-allege each and ever paragraph in this complaint as it fully set forth here . . ."

(First Amended Complaint, pg. 20: 17-21)

Thus, Plaintiffs' damages and claims are limited. Survival causes of action are governed by California Civil Code 377.30, which provides: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest," Thus unlike a wrongful death action, a survival action is a cause of action that existed while the decedent is alive and survives the decedent. The decedent's personal representation or successor in interest may commence that action. *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1264(2006).

### 2. *All force used was reasonable, and not excessive*

Whether use of force is reasonable depends on a number of factors, including: the severity of the crime, whether the suspect was actively resisting arrest, and whether the suspect poses an immediate threat to the safety of the officers. *Graham v. Conner*, 490 U.S. 386, 396 (1989). The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgements during situations that are tense and rapidly evolving. *Graham v. Conner*, 490 U.S. 386, 396-397 (1989).

Viewed from this perspective, all force used by the officers was

reasonable. The officers gave Mr. Le lawful commands and warnings; Mr. Le failed to obey officers' lawful commands, committed crimes, posed a threat to officer safety, and was ultimately arrested. Officers used force techniques that they were trained to use, that were authorized for use by the El Monte Police Department, and used the minimum force necessary to overcome plaintiff's active resistance and take him into custody.

Under these facts, the use of force was reasonable as a matter of law.

### 3. *The defendant officers are entitled to qualified immunity*

If using force was unconstitutional, the defendant officers are still entitled to qualified immunity because they reasonably believed that the uses of force were constitutional under the circumstances.

Qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. (Emphasis Supplied) Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

The Supreme Court has given further instruction on this standard by stating that, viewed in light of pre-existing law, the unlawfulness of the official action must be apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1985). The standard therefore provides that "regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the appellant was "not clearly established" or the officer could have reasonably believed that his particular conduct was lawful." *DeNieva v. Reyes*, 966 F. 2d 480, 484-85 (9th Cir. 1992) (quoting *Romero v. Kitsap County*, 931 F. 2d 624, 627 (9th Cir. 1991)).

Moreover, the Supreme Court in *Hunter v. Bryant*, 502 U.S. 224 (1991), stated that "qualified immunity gives ample room for mistaken judgment

by protecting all but the plainly incompetent or those who knowingly violate the law." Id. at 229.

While qualified immunity is typically sought before trial, defendants may still seek qualified immunity before the case is submitted to a jury. *Tortu v. Las Vegas Metro. Police,* 556 F.3d 1075 (9th Cir., 2009). Qualified immunity may be sought as part of a FRCP 50(a) motion. *Id.*

### III. DISMISSAL OF ISSUES

Plaintiffs have dismissed all Defendants except Officers Ruiz and Rojas; Plaintiff has likewise dismissed any punitive damage claim.

### IV. JURY TRIAL

A jury trial was demanded.

### V. ATTORNEY FEES

The defendants agree to a reservation of the Court's jurisdiction for the purpose of determining, after trial, the amount of attorney's fees, if any, to be granted to the prevailing party.

Dated: March 23, 2015                     FERGUSON, PRAET & SHERMAN
                                          A Professional Corporation

                                    By:   /s/ Peter J. Ferguson
                                          Peter J. Ferguson, Attorneys for
                                          Defendants City of El Monte, Victor
                                          Ruiz and Javier Rojas

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I, Coleen Ludvigson, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action. My business address is 1631 East 18th Street, Santa Ana, California 92705-7101.

    On January 21, 2015, I served the foregoing **DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW;** on the interested parties in this action:

Alexis Galindo, Esq.
Curd, Galindo & Smith, LLP
301 E. Ocean Blvd., Suite 1700
Long Beach, CA 90802

____ (By Mail)   I placed such envelope for deposit in accordance with office practice, sealed, with postage thereon fully paid and the correspondence to be deposited in the United States mail at Santa Ana, California on the same day.

XXX (By e-filing) The above noted individuals are registered with the Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

XXX (Federal)  I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 23, 2015, at Santa Ana, California.

                                        /s/ Coleen Ludvigson
                                        Coleen Ludvigson